We'll next hear the case of Leachco v. Consumer Product Safety Commission, No. 227060. Counsel you may proceed. Thank you, Your Honor. May it please the Court, Oliver Dunford for Appellant Leachco. Leachco here seeks merely the opportunity to present its constitutional claims in District Court before it's too late. In Axon v. FTC, the Supreme Court held unanimously that separation of powers claims, like Leachco's here, present here and now injuries, and Axon held that District Courts can hear those claims immediately. And it held that it can hear those claims immediately precisely because once the Commission's proceeding is over, it's impossible to remedy Leachco's injuries. Now the Commission, before Axon came out, argued that Leachco's injuries could be fully redressed after the administrative proceeding is over. After Axon, it is no longer making that argument, and it can't. Once the Commission's proceeding is over, Leachco's injury, the here and now injury, and its ongoing, ends. And at that point, it cannot recover remedies for that injury. Can you just fill us in on the status of the Commission's hearing, what the status is right now? Sure. A couple of weeks ago, we had the administrative hearing, the trial, in front of the ALJ. We have post-hearing briefs due at the end of September. At that point, the parties have, the ALJ has about 60 days to issue his initial decision, and then that becomes final after 40 days if no party appeals or if the Commission decides not to review. If there is briefing, there is about three months' worth of briefing on an appeal to the Commission. There's oral argument, and then the Commission is supposed to decide within 90 days, but that's not always the case in the most recent administrative trial the Commission held. I believe it didn't issue its final opinion for three years after the initial hearing. But the earliest that a final decision would take place in this case would be approximately late May or June of next year. Thank you. So the proceeding continues, and as long as the proceeding continues, so does Leach Co.'s injury. Obviously, Leach Co. cannot recover damages for the injury it is currently suffering or for the injury that continues, and that is the very definition of irreparable harm. The District Court, therefore, erred when it said that separation of powers violations do not establish irreparable harm, and it erred when it said that challengers, in order to get an injunction, must raise an additional individual constitutional rights claim. The District Court in that case— Could I just ask you a question about Axon? Sure. So I think you accurately described it, but let me just restate. My understanding is that there the Court decided whether Congress intended that a District Court could claim, could exercise federal jurisdiction over a separation of powers claim, challenging the agency's structure when an enforcement proceeding is pending before the agency, which is what we have here, and the Court said yes. And it relied upon this Thunder Basin test to get there. But wasn't the Court addressing a jurisdiction question? It was whether the Federal District Court had jurisdiction at that point, as opposed to a remedy question. And here, we're dealing with a remedy question. The Court didn't talk about preliminary injunction. It didn't use the words irreparable harm. So why is Axon controlling? Because under the Thunder Basin factors, the question is whether an administrative review procedure implicitly strips District Courts of jurisdiction to hear these kinds of claims. One of those factors is whether the party can obtain a remedy after the proceeding is over. But as Axon said, in this case, once the proceeding is over, it is impossible to remedy these here claims. So yes, the Court did not use the words irreparable harm. We submit that impossible to remedy is the same thing. In fact, the Supreme Court in Axon almost certainly could not have heard the underlying cases had not the Fifth Circuit and the Ninth Circuit both stated the underlying administrative proceedings in those cases. So really, the only reason that the cases got to the Supreme Court in the first place was because the Fifth and the Ninth Circuit stated the underlying administrative proceedings. Now, before Axon, the Commission argued that those state orders from the Fifth and the Ninth Circuit were unreasoned. And it said that this Court had reached the opposite conclusion, and it pointed to a posiet. And we believe, or we agree with the Commission's framing. That is to say, we believe that Axon implicitly overruled posiet. And that in order to get an injunction, in order to establish irreparable harm, all we need to show is that we are subject to an unconstitutional agency action, which is where we are. See, that may, because your damages, the damage you articulate is being subject to an unconstitutionally composed agency. Yes. It seems to me that compels us then to go to the merits. Is it an unconstitutionally composed agency? Because if it's not unconstitutionally composed, then your damages argument, which is clearly before us, fails. So I don't see how we can avoid addressing the merits. But I do have a question on the broad reading you've given to Axon. That's certainly a permissible. In fact, more than a permissible, it's a very credible reading. But I am troubled that Axon did not distinguish, as I'm recalling it, the case now. I read it earlier, but not just last week. It did not distinguish, I don't believe, or strike down Humphrey Executors. I'm sorry. So therefore, we have to assume that in the Supreme Court's mind, Humphrey Executors is still good law. And doesn't that present a problem for you? I don't think so, Your Honor. And I agree that the Court has to and should address the merits. The Court could, of course, reverse just on the error of the harm error. But the lower court, I mean, excuse me, but that hasn't been addressed yet, the merits. That's right. But go back to Humphrey Executors, since that was not overturned. That's right. Now, in CELA law. In what? In CELA law, the Court said that free enterprise fund left in place only two exceptions to the removal, the otherwise unrestricted removal power of the President. And in CELA law and free enterprise, the Court applied Humphrey Executors. And what is, those cases expressly say that there are two exceptions. One for inferior officers that have unlimited power, that doesn't apply here. And the second exception is only for principal officers who exercise no executive power. And that's what both CELA law and free enterprise fund say. And in this case, there's no dispute. The commissioners are principal officers and they exercise only executive power. So we believe under Humphrey's Executor, as explained by free enterprise and CELA law, supports our claim. Could I just ask you, a few minutes ago you responded to Judge Ebell's question about the status of the agency proceedings. It sounds adjudicative to me and not exclusively executive. Maybe there's some executive component to it in terms of enforcement, but there's also an adjudicative component to it. After all, you're presenting witnesses and documents and briefs and there's going to be a decision and an appeal. It doesn't strike me that it's one thing or the other. It's kind of a combination of function. I agree with that last point, Judge Matheson, if I may. The ruling, especially after ARTHREX, the United States Supreme Court's decision on ARTHREX, even though... What could you say? ARTHREX. I'm having trouble hearing it, too. Just spell the name. We'll know the case. I'm sorry, yeah. We can't hear you. A-R-T-H-R-E-X. ARTHREX. And that involved the Administrative Patent Judges in the Patent Office. In that case, like other cases, the Supreme Court said even though the Administrative Judges perform adjudicative-like functions, they still exercise, and in fact they must exercise, executive power. So it's true that the ALJ in this case, and ultimately the Commission, will be implementing adjudicative-like functions, but they're part of the executive branch, and therefore they exercise only executive power. Doesn't the FTC exercise executive functions? It certainly does now, but as CETA law explained, the FTC under Humphreys was described as a quasi-judicial, quasi-legislative agency that didn't exercise any executive power. And so today's FTC does exercise executive power. Well, what do we know about the 1930s FTC? Was it functionally different? That's what CELA law, that's what the Supreme Court's decision in CELA says. Well, it used the phrase from Humphreys' executor, but what was the reality? Well, I think what CELA law said, which is that it was an arm of both the legislature and the judiciary, it was carrying out legislative and judicial functions. It was not an arm of the executive, that's what CELA said, it was not an arm of the executive. Didn't the CELA law court also say that it wasn't revisiting Humphreys' executor? That's right, and as I said before, I don't believe this court needs to revisit it either. And under CELA law and for the exercise function, Humphreys allows two exceptions to the legal power. One for inferior officers, which doesn't apply here, and one for principal officers that do not exercise executive power. So Humphreys' executor, we believe, controls here and supports our position. Well, we have a, we've got another distinction, which I don't know if the Supreme Court has ruled on. And that is when the agency is a multi-membered agency with staggered terms, I believe requiring political division within them, that we don't have a Supreme Court case that says that that is a, presents a constitutional problem of executive power. I agree, the court has not, I'm sorry. And that is the facts we have here, so I'm troubled that until, unless we have that, and we don't have an express overturning of Humphrey, that we've got a Tenth Circuit case that specifically appears to, as you see, be binder Robinson, that appears to say this would be okay. Are we bound by our Tenth Circuit case until the Supreme Court has explicitly said it's wrong? Yes, but I don't think Blinder says, I don't think Blinder opposes our case. In Blinder, the question was whether the SEC, as an independent agency, could bring an action in civil court without the president's okay. And what the court said in Blinder was that the SEC could do so because the chairman of the SEC was removable at will by the president and that he had significant power over the SECs, and so in that case, the president had significant control. Did the other members of the commission, of the SEC, were they only removable for cause? They were removable for cause, but the court in Blinder also said that the chairman had significant powers over the business of the SEC, which is, again, a distinction from our case here. One more point on Humphrey's, I believe that the court there supports our case. In other words, while the Supreme Court has not expressed the address of a multi-member issue, it has said in civil law that the only exception that would apply here, which is for principal officers, is for principal officers to exercise no executive power, which is not the case here. I would like to reserve some time for rebuttal, but I'd like to make one more point on the equity question, and I would refer the court to the Alabama Association of Realties, in which the court said that our system does not allow agencies to act unlawfully, even in the pursuit of desirable acts. And so we believe that the commission has no valid interest in pursuing these from unlawful. Could I just ask you a one-minute question, and then I'll spot you one back for rebuttal. I was just curious about this Jercasey case that's before the Supreme Court. I think it relates to your ALJ arguments here. Is there reason for us to hold off until we know where that one's going to come out? It certainly could, although, again, this is an injunction. So in terms of the merits, I understand that, but we believe that the Fifth Circuit obviously supports our argument here, as does the Consumers Research case out of Eastern District, Texas, with respect to ALJs. We also pointed out that the Fifth Circuit and the D.C. Circuit had issued injunctions in ALJ removal cases. So we understand the court's wanting to wait for that, but in terms of injunction, again, although the commission could wait a long time, we believe that the court is suffering from continuing injury, and therefore an injunction. Thank you. Thank you. That's one of nature's most ineffective technological inventions, by the way. Well, I'll do my best to be heard regardless. That's the answer. Well, you've got a good projected voice, so go ahead. Thank you, Your Honor. May it please the court, Joshua Salzman on behalf of the commission. The district court correctly concluded that Leach Co. is not entitled to a preliminary injunction that would bar the commission from completing the important task of adjudicating whether Leach Co.'s products are unsafe. Indeed, Leach Co. cannot establish even one, let alone all, of the prerequisites to preliminary injunctive relief. So I'll go through them in order. Let's start with irreparable harm. And I understand why so much focus in this case has been in Axon. And if you look at Axon and Vacuum, particularly page 903, there's certainly some language in there that I can see why it would be suggestive of irreparable harm. So if they win on the merits, how are they getting a remedy? You've drug them through a proceeding for presumably years by the time it's over. They win on the merits. How are they remedied in light of Axon? So they're not entitled to a remedy at any point. And the reason why comes from a case that I don't think has come up yet at argument, but is a crucial, crucial case, which is Collins v. Yellen. And in particular, page 703. Spell the first word. Collins, C-O-L-L-I-N-S, v. Yellen. Give a cite. I've got it right here, Your Honor. It's cited heavily in the briefs. It is 141 Supreme Court, 1761. But the crucial passage is at pages 1778 to 1779 and footnote 24. Because what that passage establishes, and this court has then applied Collins in its own decision in a case called Integrity Advance that is also cited in the briefs. But what Collins stands for and recognizes is that there's an unusual rule that's applicable to challenges to allegedly unlawful removal restrictions. Because what Collins recognizes is an invalid removal restriction does not divest the agency of authority to act. And indeed, accordingly, the only remedy is available, a remedy based on an allegedly invalid removal restriction is only available when there's what the Supreme Court called compensable harm, which you might think of as essentially prejudice. Would anything have been different but for the allegedly invalid removal restriction? And here, Leach Co. has never alleged that if the ALJ was removable at will, and the commission was removable at will, that anything would have been different. The commission would not have been interested in determining whether Leach Co.'s products pose a substantial danger to the infants who use them. So let me make sure I understand how you're using Collins, because it concerned retrospective relief, correct? So Collins itself involved retrospective relief. The Fifth Circuit and the Sixth Circuit have since said that Collins applies equally to retrospective and prospective relief. The Fifth Circuit case is called Consumer Financial Services of America. It's cited in the briefs as well. And indeed, I think it's something of an artificial distinction between retrospective and prospective relief. Because on some level, that just invites artful pleading. Leach Co.'s argument here could just as easily be framed as a retrospective challenge to the commission's administrative complaint in this case. We should not be subject to a proceeding. The court should vacate the administrative complaint. But there's no evidence that unlawful removal protections led to the administrative complaint. Let me make sure I'm understanding Collins. I've looked at Collins and read what's in the briefs. And if I'm understanding it correctly, what Collins would require, I think this is your argument, that the President wishes to remove one or more of the Consumer Product Safety Commissioners and yet isn't able to for cause. Some kind of showing needs to be made that that's what the President wants. Is that correct? You need to make some kind of showing of prejudice. It can be the President's desire to remove. It could be the President's disapproval of the action in the case. But here, at a bare minimum, they haven't alleged any prejudice at all. Just a quick thought to complete the question. I'm having a hard time seeing how that can be a practical standard. How is a party in Leach Co.'s position going to be able to say, well, where are they going to find the evidence that the President is sitting there in the Oval Office and saying, I really wish I could have removed one of those commissioners, but I can't because it's a for cause. Is it realistic to think that there could ever be evidence of that? Well, I can tell you this Court applied it in Integrity Advance. The Ninth Circuit has applied it in a case called Decker-Cole, which also involved ALJ removal protections. And indeed, it makes sense because of the unique nature of these removal challenges. Because, as Collins says in 1788, the invalid removal protection does not divest the agency of authority to act. There is no constitutional violation, and therefore nothing to remedy absolute prejudice. Do you agree that they have a constitutional right to a... Well, I guess you could. I'm being redundant. A right to a constitutionally comprised tribunal? So, they have a right to a tribunal that has been vested with the necessary authority to act. They have that here. Okay, that's a different question. So, do you agree that the tribunal that passes judgment on them has to be comprised in a constitutional manner? In accordance with the Separation of Powers Doctrine? At a high level of generality, yes. Okay, so stop now, stop now. Now I want to ask you some more questions. I don't want a rambling answer. So, if that's true, is it also your position that if it doesn't harm them that they don't have that, that they have no case? Yes, and I think that's what this Court said in Integrity Advance. And it is a necessary corollary of the Collins case. That unless you have some compensable harm, not just an abstract complaint about the removal protections, but absent compensable harm, there is nothing to be remedied, and nothing that requires remediation. Then how does that square with Axon? Why would that case even come up? Why would the Supreme Court even bother saying, yes, you can first go to the District Court to challenge this before you're forced to go through an illegitimate proceeding? So Axon, as I think Judge Matheson quite correctly pointed out, was a very narrow jurisdictional case. The question there was whether, there's a channeling scheme that applies to the SEC and FTC. It actually doesn't apply to the CPSC. So there was never even a question of it applying here. Of whether you could go to District Court, or whether claims were channeled exclusively into the Courts of Appeals. And if you read the opening paragraph of Axon, Justice Kagan says, we're addressing just a threshold jurisdictional question here. It's not speaking to irreparable harm. It wasn't speaking to remedies. And there's nothing unusual about the Supreme Court deciding a small piece of the case, a threshold question. Counsel, could I just jump in? Sure. Justice Kagan says, there is a here and now injury. And she said, it's impossible to remedy, once the proceeding is over. Now, I understand your argument about, different procedural posture, different issues, all that. But, how do you get around that language? So the here and now injury language, it's interesting. That didn't originate in Axon. It originated in that Sable Law case that my friend was referencing earlier. And that language was cited to the Supreme Court in Collins. And look at footnote 24 of Collins. What Collins said is, the plaintiff in that case was over-reading the scope of Sable Law. And in fact, that all that was relevant to withstanding, it was not ultimately relevant to remedy. I do, however, I've spent quite a while fighting around the irreparable harm issue. And I think the Court understands my argument. You may or may not accept it. But regardless, I do want to spend some time on the likelihood of success on the merits here as well. Which the district court never addressed, correct? Correct. So one option I don't dispute that's available to this court, if you disagree with me on the irreparable harm issue, though I certainly hope you won't, is to simply vacate and send it back. But that wouldn't give them a preliminary injunction. I understand they're asking this court to actually affirmatively issue them a preliminary injunction. For that, they would certainly need to establish likelihood of success on the merits of at least one of their two constitutional claims. And I don't think they can do that. Well, they specifically tied irreparable harm to the need to act now. So, I mean, in a way, I agree with you. I don't want to address things that the district court didn't address. But it seems to me that's the core of their argument. Yeah. And that's certainly the core of their argument as to why they're entitled to a preliminary injunction of deductive relief. So one of their arguments is this claim that the commission itself has invalid removal protections. And I think the SEC versus Finder-Robinson case that was discussed during the first half of the argument is, in fact, squarely on point, as are the many decisions construing and applying Humphrey's executor, which remains good law post the Supreme Court's decision in Saylor law. If Saylor law said what Leach Co. claims it does and established a categorical rule that any time an agency exercises substantial executive authority, it cannot have, its principal officers cannot have removal protections, that opinion would look quite different and would be much shorter. The Supreme Court in Saylor law took pains to distinguish the novel, single-headed consumer financial protection bureau from all of the predecessors, including citing the Consumer Product Safety Commission by name as an alternative. And in the concluding section of the opinion, even noted that one of the options that remained available to Congress was to reconstitute the CFPB to look more like the Consumer Product Safety Commission, as a multi-member body instead of a single-headed agency. There is simply no precedent for the idea that an agency that looks like this one, that's multi-member, has partisan balancing requirements in staggered terms and exercises authority of the kinds that are exercised here, is not OK. In, for example, the Supreme Court's decision- Wasn't your restructuring point made in the plurality? It was. That point was made in the plurality, but I think if you're counting justices, certainly the dissenters would have supported that as well. Because I believe they concurred on remedy. So while it is technically a plurality opinion, I believe it actually commanded a majority of the court. Because though Justice- I believe it was Justice Kagan wrote separately, they concurred on the remedy. In any case, Blinder-Robinson remains good law. They tried to distinguish it on the grounds that the chairman of the SEC was assumed to be removable at will. And I want to drill down a little bit on terminology here. I understand Blinder-Robinson to mean not the chairman could be removed from the commission altogether, but rather the identity of the chairman from among the commissioners could be altered. And that's equally true of the CPSC. The Office of Legal Counsel at the Department of Justice issued an opinion about 20 years ago. The site's at 25 OLC 171, specifically saying the president can remove the chairman of the CPSC at will. And the chairman of the CPSC has the same broad powers- Is that cited in your brief? It wasn't cited in our brief. It was cited in the- As the court's aware, there were then papers related to the state pending appeal. They didn't address Blinder-Robinson at all until their merits reply brief. So we didn't have an opportunity to respond to their attempts to distinguish him until then. But I would say that the chair of the CPSC- Could you give us that in a 28-J? Sure. And then you can respond, of course. I'd be happy to. And I just also want to note the chairman of the CPSC has broad powers just like the chairman of the SEC. And the relevant site for that is 15 USC 2053. Subsection F, which vests the chairman of the CPSC broadly with the administrative powers of the agency. Say that statute site again. Sure. 15 USC 2053 subpart F. F as in Frank? F as in Frank, yes. So accordingly, they can't show that Blinder-Robinson has been overruled by say the law and it remains this circuit's law as applicable here. They also have this ALJ removal argument as Judge Matheson, I believe it was, noted earlier. That question is before the Supreme Court right now in the Jarkissi case. However, I think the court can reject it on the merits. The Ninth Circuit in the Decker-Cole case I referenced earlier rejected an analogous claim. And I think that well-reasoned decision provides guidance. You haven't addressed this morning the standard of review for preliminary injunction versus what it would be for a straight-out merits decision. Does that make a difference here? I'm not sure it does in the context of this case. Obviously, the decision to enter preliminary injunctive relief is an equitable judgment that's vested in the first instance in the district court. So as our brief notes, one option available, if you disagree with us on the question of irreparable harm, you could simply reverse that aspect and let the district court exercise its equitable discretion in the first instance. We would urge you to just affirm on the alternate grounds of lack of likelihood of success on the merits. But then again, we would also, of course, urge you just to affirm on the same grounds as the district court lack of irreparable harm. Thank you. Thank you very much, Your Honors. Let's give Mr. Dunford two minutes. Thank you, Your Honor. With respect to jarczy, I believe the fact that the Supreme Court is considering that case shows why Collins does not apply here. As Judge Matheson pointed out, if Collins applies, then there's no reason for the court to consider jarczy. It's an ALJ removal case, and there's no reason. Also, Collins is addressed only retrospective harm. And that's true of the other cases that my friend cited, including integrity advances from this court. That involved a completed administrative proceeding. And so we don't think Collins applies to prospective relief, which is being sought here. Again, Collins was issued before Axon. And Axon makes no sense if Collins trumps, from time ago, trumps the ruling in Axon. With respect to whether... Is that right if we interpret Axon as only addressing standing? Axon, yes, because, or jurisdiction. Yeah, jurisdiction. Yes, because the reason Axon held that district courts have jurisdiction is precisely because once the administrative proceeding is over, then it's impossible to remedy. And if Collins says there's no remedies available for an ALJ removal claim, then Axon makes no sense. SILA law did expressly say that there are two exceptions to the president's removal power, one of which is for principal officers who do not exercise any executive power. And that's at pages 2198 and 2199 of SILA law. My friend talked about the abstract nature of Axon holding. But Justice Kagan, in her opinion for the court, said exactly that. She said that the here-and-now claim may sound a bit abstract, but the court has made clear that it is a here-and-now injury. And SILA law actually was not the first case. SILA law borrowed that here-and-now injury from an earlier case. So this here-and-now injury is a longstanding rule by the Supreme Court. You're on the home stretch. Okay, thank you. With respect to the OLC, and I think we'll have a chance to do this through the 28J letter, but I would like to point out that OLC letter says that the president can remove the chairman of the CPSC. If that's true, then we win on the merits. And therefore, the court should rule for us on the merits at least with respect to the removal of the chairman of CSPC and then the irreparable harm follows. Finally, the district court, when it said that the here-and-now injury was not enough for irreparable harm, pointed to SILA law, which again mentioned a here-and-now, but the district court said that SILA law addressed only standing in that decision. But the court made clear, even though that was a standing decision, there is a here-and-now injury, and in this case, even though Axon was a jurisdictional question, it still conclusively held that a remedy after the administrative proceedings over was impossible. Thank you. Thank you. You packed a lot in in those two minutes. You both did, actually, this morning. We have a lot to consider. Very interesting case, and thank you for the arguments. The case will be submitted, and counsel are excused. Thank you.